## WABASH RAILROAD COMPANY v. BEEDLE, ADMINISTRATRIX.

[No. 21,610.   Filed February 4, 1910.]

1. PLEADING.— *Complaint.*— *Railroads.*— *Excessive Speed.*— *Ordinances.*—A complaint alleging that defendant railroad company ran its train at a speed in violation of a city ordinance, shows negligence; but in order for such negligence to constitute a cause of action, it must be shown that such violation was the proximate cause of the injury complained of.  p. 442.

2. PLEADING.— *Complaint.*— *Railroads.*— *Violation of City Ordinances.*—*Proximate Cause.*—A complaint alleging that decedent was in his caboose standing upon a switch in a city and waiting for a passenger-train to pass, such switch being open, that a city ordinance forbade the running of a train at a greater speed than six miles per hour, that defendant carelessly and recklessly ran its passenger-train at forty miles per hour into such switch, killing the decedent and leaving as his survivors, his widow and infant child, and that if defendant had checked the speed of its train to six miles per hour the collision would not have occurred, does not state a cause of action.  p. 443.

3. PLEADING.— *Complaint.* — *Railroads.* — *Violating City Ordinance.*—*Conclusions.*—An allegation in a complaint against a railroad company for killing plaintiff's decedent, that "if said engineer had checked the speed of his train to a speed of six miles per hour upon entering into said city, * * * the collision with the caboose of decedent's train would not have occurred," is a mere conjecture or conclusion, and does not show that if the engineer had run his train at six miles per hour he could have avoid a collision with decedent's train.  p. 443.

4. PLEADING.—*Complaint.*—*Railroads.*—*Excessive Speed.*— *Conclusions.*—A complaint alleging that defendant railroad company's engineer "carelessly and recklessly * * * ran his said engine into said city * * * at a speed of more than forty miles per hour * * * into said north switch, and against and upon said caboose * * * instantly killing the plaintiff's decedent; that if said engineer had checked the speed of his train to a speed of six miles per hour [the ordinance rate] * * * said collision * * * would not have occurred," does not show that the engineer did not slow the speed of his train to six miles per hour.  p. 444.

5. PLEADING.— *Complaint.*— *Railroads.* — *Collisions.* — *Proximate Cause.*—*Conclusions.*—A complaint alleging that defendant railroad company's locomotive engineer carelessly and recklessly

ran his train through a city, having an ordinance speed limit of six miles per hour, at the rate of forty miles per hour, colliding with a train upon a side-track and killing plaintiff's decedent, an employe, and "that the aforesaid negligence of said engineer was the direct cause of the death of said decedent," does not show that the proximate cause of the death was defendant's violation of the ordinance. p. 444.

6. PLEADING.—*Complaint.—Conclusions.*—A complaint must positively aver all facts necessary to a cause of action, conclusions, inferences and recitals being disregarded. p. 445.

7. PLEADING.—*Complaint.—Master and Servant.—Relationship.*— A complaint by an administrator against his decedent's master, for injuries resulting in such decedent's death, must allege facts showing that such decedent was in defendant's employ. p. 445.

From Cass Circuit Court; *John S. Lairy,* Judge.

Action by Mary A. Beedle, as administratrix of the estate of Bailey Beedle, deceased, against the Wabash Railroad Company. From a judgment for plaintiff, defendant appeals. Transferred from Appellate Court under §1394 Burns 1908, subd. 2, Acts 1901, p. 565, §10. *Reversed.*

*Stuart, Hammond & Simms, Myers & Yarlott* and *John C. Nelson,* for appellant.

*Cox & Andrews,* and *McConnell, Jenkines, Jenkines & Stuart,* for appellee.

JORDAN, J.—Appellee as administratrix of Bailey Beedle, deceased, sued appellant railroad company in the lower court to recover damages for the alleged negligent killing of her decedent. The cause was tried upon the second and fourth paragraphs of the amended complaint. A demurrer was sustained to the first paragraph and the third was dismissed. Appellant unsuccessfully demurred for want of facts to the second and fourth paragraphs. The answer of the defendant was a general denial. There was a trial by jury, and a verdict returned in favor of plaintiff, awarding her damages in the sum of $4,500. Along with this general verdict the jury returned answers to interrogatories propounded. A motion by appellant for a judgment in its favor upon the answers

was denied, and judgment was rendered upon the general verdict.

Appellant relies for reversal upon the alleged errors of the court in overruling its demurrer to the second and fourth paragraphs of the complaint in denying its motion for judgment in its favor upon the answers to the interrogatories.

The second paragraph of complaint alleges that the defendant is a corporation, that on February 10, 1905, and prior thereto, it was engaged in operating a railroad from the city of St. Louis, Missouri, to the city of Detroit, Michigan, and the city of Toledo, Ohio; that said railway crosses the counties of Carroll, Cass and Miami in the State of Indiana; that said railroad, as operated by the defendant, runs through the city of Delphi in said Carroll county; that said railroad approaches said city of Delphi from the west by a curve from the northwest until it reaches a point about one-fourth of a mile from the western limits of the city, then on a tangent to or near the city limits, where it curves sharply to the southeast until it reaches the station in said city; that a short distance within the city limits of said city of Delphi the defendant had constructed and maintained, and had in use on February 10, 1905, three switches, a short distance east of the eastern end of the tangent aforesaid, one extended eastwardly on the south side of the main line, and one extended eastwardly on the north side of the main line; that a short distance eastwardly from where the switch last aforesaid opened into the main line, a branch switch opened into said north-side switch; that on said day a target marked the opening of said north-side switch; that a few rods east of said switch target stood a semaphore, about thirty feet high, intended as a signal for the block system of said defendant; that on said February 10 plaintiff's decedent was an employe of the defendant as freight conductor in charge of a freight train on defendant's road; that about 9:30 o'clock a. m. on said date said decedent ran his train into said north switch, far enough to the east to

clear said branch switch, and thereupon said decedent's rear brakeman closed and securely fastened said switch; that decedent was ordered by the defendant to run his train into said switch and upon the side-track connected therewith, and remain there until the east-bound passenger train No. 6, due at 9:15 o'clock, had passed; that in obedience to said orders said decedent ran his train into said switch and upon said side-track, and was holding his train upon said side-track until said east-bound passenger train on defendant's main track had passed; that while holding his train as aforesaid upon said side-track the decedent was in the caboose engaged in making out his report to the defendant of his doings as such conductor while he was upon his present trip from LaFayette, Indiana, to Peru, Indiana, which report he was required to have ready on his return to Peru, Indiana, with said train; that while in said caboose a passenger-train upon the defendant's road approached the north switch, running upon the main line of the defendant's road at a speed of more than forty miles per hour.

It is then alleged that an ordinance, passed and adopted by the city of Delphi in 1872, was in full force and effect; that by this ordinance it was made unlawful for any conductor, engineer or other person having a railroad engine or train of cars in charge to run, or permit the same to be run, along or upon any track in said city at a greater rate of speed than six miles per hour; that the engineer in defendant's service, "in charge of and controlling the engine attached to and pulling said passenger-train, carelessly and recklessly disregarding said ordinance, ran his said engine into said city of Delphi, along and upon the main track of defendant's said road at a speed of more than forty miles per hour; that said north switch was opened, after having been closed as hereinbefore averred, in some manner unknown to plaintiff's decedent; that said engine and train ran into

said north switch, and against and upon said caboose, crushing, mangling and instantly killing the plaintiff's decedent; that if said engineer had checked the speed of his train to a speed of six miles per hour, upon entering into said city, and before reaching the west end of said north switch, said collision with the caboose of said decedent's train would not have occurred; that the aforesaid negligence of the said engineer was the direct cause of the death of said decedent.

The age of the decedent, his character and his earnings, and that he left surviving him a widow and an infant child, are all shown, and judgment for $10,000 is demanded.

It will be noted that this second paragraph proceeds upon the theory that the engineer of passenger-train No. 6 was guilty of negligence in running his train in violation of the speed ordinance of the city of Delphi, which limits the speed of a train to six miles per hour.

The fourth paragraph is wholly silent in respect to any ordinance, but is based upon the theory that the engineer of train No. 6 was careless and negligent in running his engine at a high rate of speed, and that he carelessly and negligently failed to look at the switch target for said north switch, and carelessly and negligently failed to see that said switch was open, and carelessly and negligently failed to check the speed of his engine, but carelessly and negligently suffered his engine to leave the main line and run into and upon said north switch, and thereby collide with the caboose in which appellee's decedent was engaged in making out his report. In said fourth paragraph it is not averred in any manner whatever that the decedent at the time of the fatal accident was an employe of defendant or in any manner engaged in its service. Consequently there is an entire omission of any facts to show that the relation of master and servant existed between the decedent and defendant.

An examination of the second paragraph readily discloses that it is by no means a model pleading. Among the sev-

eral objections urged against its sufficiency is that 1. the facts therein alleged do not establish that the violation of the ordinance of the city of Delphi by the engineer in question, in running his train faster than permitted, is the proximate cause of the fatal accident. While it is true that if appellant's engineer in charge of the passenger engine ran his train through said city at a speed in excess of that fixed by the ordinance, he would, as the authorities affirm, be guilty of negligence *per se,* nevertheless, such negligence of the engineer alone is not sufficient to entitle a recovery upon the part of appellee under the provisions §8017 Burns 1908, subd. 4, Acts 1893, p. 294, §1, which make a railroad company liable for injury or damages suffered by an employe thereof, where such damages are caused by the negligence of one of its servants who is in charge of any locomotive engine or train upon its railroad, but the plaintiff in this case is required to go further in her pleading, and show by facts therein alleged that such negligence was the proximate cause which resulted in the fatal collision or accident. Or, in other words, the facts alleged must show that there was a causal connection between the unlawful act upon the part of the engineer running his engine or train in violation of the municipal ordinance, and the injury in controversy. This principle is well affirmed by authorities. See *Pennsylvania Co.* v. *Hensil* (1880), 70 Ind. 569, 36 Am. Rep. 569; *Thompson* v. *Citizens St. R. Co.* (1899), 152 Ind. 461; *Baltimore, etc., R. Co.* v. *Conoyer* (1898), 149 Ind. 524; *Baltimore, etc., R. Co.* v. *Young* (1896), 146 Ind. 374; *Nickey* v. *Steuder* (1905), 164 Ind. 189; *Lake Erie, etc., R. Co.* v. *Mikesell* (1899), 23 Ind. App. 395; 3 Elliott, Railroads, §1310, 1 Thompson, Negligence (2d ed.), §44.

The second paragraph of complaint discloses that it was the north switch upon which the freight-train in charge of decedent was standing at the time of the collision, and it

is further shown that the west end of this switch was some distance east of the west limits of the city.

In the portion of this paragraph in which the pleader sets out the facts leading up to the fatal accident, we find

2. that he charges "that while said decedent was in said caboose, a passenger-train on the defendant's said road approached said north switch, running upon the main line of the defendant at a speed of more than forty miles per hour;" that on said date there was in full force and effect an ordinance of the city of Delphi, duly enacted, etc., and that by section nine thereof it was declared to "be unlawful for any conductor, engineer or other person having a railroad engine or train of cars in charge, to run or permit the same to be run along or upon any track in said city, at a greater rate of speed than six miles per hour; that the engineer in defendant's service, in charge of, operating and controlling the engine attached to and pulling said passenger-train, carelessly and recklessly disregarding said ordinance ran his said engine into said city of Delphi, along and upon the main track of defendant's said road, at a speed of more than forty miles per hour; that said north switch was opened, after having been closed as hereinbefore averred, in some manner unknown to plaintiff's decedent; that said engine and train ran into said north switch, and against and upon said caboose, crushing, mangling and instantly killing the plaintiff's decedent."

Relying upon these statements the pleader has left the court to conclude that the negligence of the engineer in

3. running his train into the city of Delphi at a speed greater than that permitted by the ordinance caused the train to run into the open switch and collide with the caboose. This certainly, under the facts, would be a strained conclusion. There is an entire absence of any averments going to show that the engineer charged with the violation of the ordinance knew or might have known, in the

exercise of ordinary care, that the switch in question was open and that the decedent's train was standing thereon. There are no averments of facts going to show that if the engineer had run his engine and train within the limits of the speed ordinance he could, under the circumstances, have seen the open switch and have checked and stopped his train in time to avoid the accident. We are not authorized to assume, in the absence of facts, that if he had run his engine at a speed not exceeding six miles an hour he could have seen the open switch in time to stop or check his train and thereby avoid the fatal collision. It is true that the pleader states "that if said engineer had checked the speed of his train to a speed of six miles per hour upon entering into said city and before reaching the west end of said north switch, the collision with the caboose of decedent's train would not have occurred." This, however, is not a statement of facts, but is a mere supposition, conjecture or conclusion of the pleader, and, therefore, cannot aid the sufficiency of the paragraph in question. Its sufficiency must depend upon the averment of material facts, and in the absence of such facts the suppositions, conclusions or conjectures of the pleader lend no support.

The hypothetical statement, "if the engineer had checked the speed of his train," cannot be regarded as the equivalent of a positive averment that he did not check the

4. speed of his train to six miles per hour before he reached the switch in controversy. Likewise the statement, "that the aforesaid negligence of said engineer was the direct cause of the death of said decedent,"

5. is also but a conclusion of the pleader, and one not warranted by the facts as alleged in the pleading.

The following authorities fully sustain our holding that the paragraph in question wholly fails to show, under the averments of facts therein, that the fatal accident in question is directly traceable to the negligence charged against appellant's engineer. *Pennsylvania Co.* v. *Hensil, supra;*

*Pittsburgh, etc., R. Co.* v. *Conn* (1885), 104 Ind. 64; *City of Logansport* v. *Kihm* (1902), 159 Ind. 68; *Southern R. Co.* v. *Sittasen* (1906), 166 Ind. 257; *Chicago, etc., R. Co.* v. *Lain* (1908), 170 Ind. 84; *Nickey* v. *Steuder, supra; Lake Erie, etc., R. Co.* v. *McFall* (1905), 165 Ind. 574; *Lake Erie, etc., R. Co.* v. *Mikesell, supra.*

It has been repeatedly affirmed by this court that facts in a pleading must be positively averred and not set out by way of recital, inference or conclusion, and that no facts will be presumed to exist in favor of a pleading which have not been averred or alleged, as it is always presumed that a party's pleading is as strong in his favor as the facts will warrant. *Wabash R. Co.* v. *Engleman* (1903), 160 Ind. 329; *Wabash R. Co.* v. *Hassett* (1908), 170 Ind. 370, and the many authorities cited.

Possibly appellee by an amended complaint may, by the averment of material facts, be able to attribute such negligence to appellant's engineer as will show that his negligence was the proximate cause of the accident, which resulted in the death of her decedent. See *Pittsburgh, etc., R. Co.* v. *Sudhoff* (1910), *ante,* 314.

In this latter case some of the questions raised by appellant's counsel are decided adversely to their contentions.

We conclude that the second paragraph of complaint is insufficient, and the demurrer thereto should have been sustained.

The fourth paragraph of complaint, as previously stated, alleges no facts to show that appellee's decedent, at the time he received the injury which resulted in his death, was in appellant company's service. Therefore the relation of master and servant is not shown to have existed between him and appellant company at the time he received his fatal injury. This was an essential fact to be shown, and in the absence thereof the fourth paragraph, for this reason alone, is fatally defective, and the demurrer thereto should have been sustained. 4 Elliott, Railroads (2d

State, ex rel., *v.* Barr—173 Ind. 446.

ed.), §1766, and authorities cited; 13 Ency. Pl. and Pr., 893, and authorities cited; 6 Thompson, Negligence (2d ed.), §7522; 1 Thornton, Negligence, §471.

For the error of the court in overruling appellant's demurrer to the second and fourth paragraphs of the complaint the judgment is reversed, with instructions to sustain the demurrer to these paragraphs, with leave to appellee to amend her complaint.

Myers, J., did not participate in the decision of this cause.